Murray Clayton **FRANK**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–04–00985–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 15, 2005.

Discretionary Review Refused
April 5, 2006.

Karen Clark Harpold, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., Dist. Atty.– Harris County, Kelly Ann Smith, Asst. Dist. Atty., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

### OPINION

ELSA ALCALA, Justice.

Appellant, Murray Clayton Frank, appeals from the trial court's postconviction order pursuant to Article 64.04 of the Code of Criminal Procedure. *See* Tex.Code Crim. Proc. Ann. art. 64.04 (Vernon Supp.

2005). The trial court's order stated that the postconviction DNA test results were "not favorable" to appellant and that, had those results been available during the trial of his offense, "it is not reasonably probable that appellant would not have been convicted." In his sole point of error, appellant contends that the complainant's DNA would have been on the towel that he ejaculated into, along with his DNA, if he had penetrated the complainant's mouth with his male sexual organ, as the State asserted, but because her DNA was not present, it is reasonably probable that he would not have been convicted given the postconviction DNA results. Because the postconviction DNA results are consistent with the preconviction DNA results, we hold that the trial court correctly determined that the postconviction DNA test results did not warrant a finding favorable to appellant under article 64.04. We therefore affirm.

### Background

In 1998, appellant did yard work at the home of complainant, a 79–year–old woman. About a month later, he returned, uninvited, to her home and asked her if he could use her telephone. She allowed him to enter the house, escorted him to the telephone, and went to a room at the rear of the house. After appellant used the telephone, he entered the room into which complainant had gone. According to the complainant, appellant placed his male sexual organ into her mouth without her consent and then ejaculated into a towel. According to appellant, however, he did not penetrate complainant's mouth or touch her, but masturbated in her presence and ejaculated into a towel. Appellant acknowledged that complainant did not consent to his actions.

Appellant was charged with aggravated sexual assault of an elderly person. *See*

TEX. PEN.CODE ANN. § 22.021(a) (Vernon Supp.2005) (*stating* that person commits aggravated sexual assault by intentionally or knowingly causing sexual organ to penetrate mouth of elderly complainant). The towel that appellant ejaculated into was tested for the presence of DNA by the Houston Police Department Crime Laboratory (HPD Crime Lab), which concluded that appellant's DNA profile was consistent with the DNA profile obtained from the towel. Appellant pleaded guilty to the charged offense, and the trial court sentenced him to 25 years in prison. On appeal, appellant's appointed counsel filed an *Anders* brief, stating that there were no valid grounds for appeal, and we affirmed the trial court's judgment. *Frank v. State*, No. 01–99–00265–CR, 2000 WL 351734 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (not designated for publication) (*citing Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967)).

After his conviction and appeal, appellant filed a timely motion under article 64.03 of the Code of Criminal Procedure, requesting that the towel be retested. *See* TEX.CODE CRIM. PROC. ANN. art. 64.03 (Vernon Supp.2005). The trial court did not rule on appellant's motion, however, because the State voluntarily arranged for a new DNA analysis to be conducted. A private laboratory tested the towel for the presence of DNA and concluded that appellant's DNA profile was consistent with the DNA profile obtained from the towel and that no DNA foreign to appellant was on the towel.

On September 8, 2004, the trial court held a postconviction hearing pursuant to Code of Criminal Procedure article 64.04. *See* TEX.CODE CRIM. PROC. ANN. art. 64.04. The next day, the trial court ruled that it was not reasonably probable that, had the new DNA test results been available be-

fore or during trial of the offense, appellant would not have been prosecuted or convicted.

### Effect of Postconviction DNA Testing

The State and appellant both contend that we should review trial-court rulings under article 64.04 de novo. Under article 64.03, a convicting court may order forensic DNA testing only if the convicted person establishes by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). Article 64.04 states that "[a]fter examining the results of [DNA] testing under Article 64.03, the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that [appellant] would not have been convicted.". TEX.CODE CRIM. PROC. ANN. art. 64.04. Although article 64.03 provides a convicting court the proper guidelines for deciding whether to allow retesting of DNA evidence, article 64.04 specifically provides for a subsequent hearing to determine the likelihood of conviction had the newly acquired results existed at the time of prosecution. *See* TEX.CODE CRIM. PROC. ANN. arts. 64.03(a)(2)(A), 64.04. Articles 64.03 and 64.04 act in concert to establish the procedures of retesting DNA evidence and reviewing the results. *See Baggett v. State*, 110 S.W.3d 704, 705–06 (Tex.App.Houston [14th Dist.] 2003, no pet.).

The Court of Criminal Appeals has determined that de novo review is appropriate for appeals arising under article 64.03 because appellate review does not depend on determinations of demeanor or credibility, but on application of law to fact to ascertain whether a defendant has shown, by a preponderance of the evidence, "that,

had the results of the DNA test been available at trial, there is a 51% chance that the defendant would not have been convicted." *Smith v. State*, 165 S.W.3d 361, 364 (Tex.Crim.App.2005). The Court of Criminal Appeals has not addressed, however, the standard of review for appeals from article 64.04. Intermediate appellate courts that have addressed the standard of review for appellate review of appeals arising under article 64.04 have applied the de novo standard. *See Baggett*, 110 S.W.3d at 705 (*stating*, "The pertinent language of article 64.04 is almost identical to the language provided in article 64.03; thus, we apply this [de novo] standard."); *Hicks v. State*, 151 S.W.3d 672, 675 (Tex.App.Waco 2004, pet. ref'd); *Booker v. State*, 155 S.W.3d 259, 266 (Tex.App.Dallas 2004, no pet.); *Fuentes v. State*, 128 S.W.3d 786, 787 (Tex.App.Amarillo 2004, pet. ref'd).

Our review of the trial court's order under article 64.04 does not depend on determinations of demeanor or credibility, but on application of law to the undisputed facts concerning the effect of postconviction DNA test results on whether appellant would have been convicted, were those results known before or during trial. *See Rivera v. State*, 89 S.W.3d 55, 59 (Tex.Crim.App.2002). We therefore agree with our sister courts and also conclude that de novo review is appropriate for appellate review of the trial court's rulings under article 64.04. *See Hicks*, 151 S.W.3d at 675; *Booker*, 155 S.W.3d at 266; *Fuentes*, 128 S.W.3d at 787; *Baggett*, 110 S.W.3d at 705. In reviewing the trial court's article 64.04 ruling de novo, we review the entire record to determine whether appellant established, by a preponderance of the evidence, that he would not have been convicted because of favorable DNA test results. *See Smith*, 165 S.W.3d at 365.

The record here shows that both the DNA results obtained from the HPD Crime Lab before appellant was convicted and those obtained from a private laboratory after his conviction are identical. Both laboratories determined that appellant's DNA only was present on the towel. We conclude, therefore, that appellant has failed to establish, by a preponderance of the evidence, that he would not have been convicted had the postconviction DNA test results been available before or during his trial. *See id.* We hold that the trial court did not err by finding that appellant's DNA test results were "not favorable" to him.

We overrule appellant's sole point of error.

### CONCLUSION

We affirm the judgment of the trial court.