

# NUMBER 13-20-00216-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**LUZALBERT HERNANDEZ,**                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

---

### On appeal from the 377th District Court of Victoria County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Benavides**

Appellant Luzalbert Hernandez appeals the trial court's denial of his post-conviction motion for DNA testing brought under Chapter 64 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01. Specifically, Hernandez contends: (1) the evidence was sufficient to show biological material existed; (2) the

material is in the possession of the state; (3) exculpatory results would have cast serious doubt on his conviction; and (4) the trial court erred in finding his motion for DNA testing to be frivolous. We affirm.

## I. BACKGROUND[1]

Hernandez and four other individuals—Jesse Ray Garcia, Thomas Sedillo Cano III, Johnathan Paul Escalona, and Florentino Tovar Jr.—were indicted with engaging in organized criminal activity and the aggravated assault of Abel Resendez. *See* TEX. PENAL CODE ANN. §§ 71.02, 22.02 The indictment alleged the five defendants were acting "as parties or principals" during the commission of these offenses. The indictment further alleged that the defendants used or exhibited a deadly weapon during the commission of the assault.

At trial, Tovar, one of the co-defendants, testified that he was present at a boot shop owned by Manuel Moreno on April 5, 2016. According to Tovar, that evening, he witnessed Hernandez and Cano enter the boot shop and heard Hernandez tell Resendez, "Get up. Let's fight." Tovar was able to observe parts of the assault through the window,

---

[1] In its order denying Hernandez's motion for DNA testing, the trial court took judicial notice of its files from Hernandez's trial. We note that the Texas Court of Criminal Appeals has held that, in Chapter 64 proceedings, "all of the evidence that was before the trial court before it made its ruling should be available to, and considered by, the reviewing court." *Asberry v. State*, 507 S.W.3d 227, 229 (Tex. Crim. App. 2016). We also note that an "appellate court may take judicial notice of its own records in the same or related proceedings involving the same or nearly the same parties." *Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987); *see Flores v. State*, 491 S.W.3d 6, 7 n.1 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Jacobs v. State*, 115 S.W.3d 108, 112-13 (Tex. App.—Texarkana 2003, pet. ref'd); *see also State v. Bryan*, No. 11-17-00236-CR, 2019 WL 6337604, at *2 (Tex. App.—Eastland Nov. 27, 2019, no pet.) (mem. op., not designated for publication); *Ambriati v. State*, No. 09-15-00065-CR, 2015 WL 6998616, at *1 (Tex. App.—Beaumont Nov. 12, 2015, pet. ref'd) (mem. op., not designated for publication). Bearing this in mind, on our motion, we take judicial notice of the appellate records from Hernandez's direct appeal of his underlying conviction for the purpose of resolving the appeal before us. *See Hernandez v. State*, No. 13-17-00271-CR, 2018 WL 3583835, at *1–10 (Tex. App.—Corpus Christi–Edinburg July 26, 2018, pet ref'd) (mem. op., not designated for publication).

and saw Hernandez fighting with Resendez while Moreno held on to Cano.

Garcia, another co-defendant, testified that he witnessed Hernandez and Cano enter the boot shop and assault Resendez. According to Garcia, at a certain point, the men spilled into a back room of the shop and Garcia lost sight of the fight.

Moreno, the boot shop owner, testified to seeing two men, one of whom was Hernandez, rush into his store and strike Resendez. The fight eventually continued into a back room, and Moreno tried to separate the parties by holding onto one of the assailants. Moreno testified that he had been keeping a golf club in his boot shop at the time of the assault. He further stated that he did not see Hernandez grab the golf club, but that he observed Hernandez swinging it at Resendez. Moreno was later able to pull the golf club away from Hernandez during the fight.

The victim, Resendez, also testified regarding the assault. According to Resendez, two or three people entered the boot shop, including Hernandez and Cano, and started to attack him. He observed Hernandez walk in with a golf club and stated that he was struck twice by Hernandez with the golf club.

The defense's theory at trial was that Hernandez was present during the assault and fought with Resendez, but that it was a one-on-one fight where no golf club was used. That, rather than being gang-related, this was simply a personal dispute between Resendez and Hernandez.

At the conclusion of the trial, the jury charge authorized the jury to convict Hernandez of engaging in criminal activity and aggravated assault as a principal or a party to the offense. The jury returned a general verdict finding Hernandez guilty as alleged in

3

the indictment. Hernandez appealed his conviction, which was later affirmed. *Hernandez v. State*, No. 13-17-00271-CR, 2018 WL 3583835, at *1–10 (Tex. App.—Corpus Christi–Edinburg July 26, 2018, pet ref'd) (mem. op., not designated for publication).

Subsequently, on March 30, 2020, Hernandez filed a motion for post-conviction DNA testing on the golf club. In his motion, he specifically requested "fingerprints/touch DNA testing." On April 7, 2020, the trial court denied Hernandez's motion by written order without a hearing. The trial court found that Hernandez had not established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing of the golf club. Hernandez filed a timely notice of appeal.

We abated this appeal and remanded to the trial court for further findings concerning Hernandez's indigency and whether he was entitled to a court-appointed attorney. The trial court found Hernandez's motion for post-conviction DNA testing to be "frivolous." Additionally, the trial court found that identity was and is not an issue in this case, that no evidence of biological material existed on the golf club, and that this was not the type of case where exculpatory DNA testing would have changed the outcome at trial. The trial court further found that since no reasonable grounds existed for the motion to be filed, Hernandez was not entitled to appointed counsel.

## II. APPLICABLE LAW & STANDARD OF REVIEW

Under Chapter 64 of the Texas Code of Criminal Procedure, "[a] convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that has a reasonable likelihood of containing biological material." TEX. CODE CRIM. PROC. ANN. art.

4

64.01(a-1). To be entitled to DNA testing under Chapter 64, several requirements must be met first. See *id.* arts. 64.01, 64.03; *see also Hall v. State*, 569 S.W.3d 646, 655 (Tex. Crim. App. 2019) (confirming that to be entitled to postconviction DNA testing, "a convicted person must satisfy the requirements of Chapter 64 of the Code of Criminal Procedure"). The convicting court may order forensic DNA testing only if the statutory preconditions are met. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03.

> Before a trial court may order DNA testing under Chapter 64, it must first find:
>
> (A) the evidence:
>
> > (i) still exists and is in a condition making DNA testing possible; and
>
> > (ii) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;
>
> (B) there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and
>
> (C) identity was or is an issue in the case.

*Id.* art. 64.03(a)(1).

Additionally, the movant must show, by a preponderance of the evidence, that he would not have been convicted if exculpatory results had been obtained through DNA testing, and that the request for DNA testing is not made to unreasonably delay the execution of sentence or administration of justice. *Id.* art. 64.03(a)(2)(A). To meet the burden of the Chapter 64 requirements, a convicted person must provide statements of fact in support of his claims; general, conclusory statements are insufficient. *See Swearingen v. State*, 303 S.W.3d 728, 732 (Tex. Crim. App. 2010) (stating that "a mere

5

assertion or a general claim" will not satisfy an appellant's Chapter 64 burden).

When reviewing a ruling on a motion for DNA testing, we defer to the "trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other application-of-law-to-fact issues." *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). However, because the trial court did not conduct a live hearing on the post-conviction motion for DNA testing, we review the issues raised de novo. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

### III. TEX. CODE. CRIM. PROC. ANN. ARTS. 64.03(a)(1)(C) & 64.03(a)(2)(A)

The trial court found identity was not and is not an issue and that Hernandez had not established by a preponderance of the evidence that an exculpatory DNA test result would have changed the outcome of his trial. Hernandez challenges these findings.

### A. Identity Issue

The identity requirement in Chapter 64 specifically relates to the issue of identity as it pertains to the DNA evidence. *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008). If DNA testing would not determine the identity of the person who committed the offense or would not exculpate the accused, then the requirements of Chapter 64 have not been met. *Id.* Identity is not an issue when physical evidence is collected from a common area and could have been left by any number of people, meaning that an exculpatory DNA result would not also exclude the movant as the assailant. *Cate v. State*, 326 S.W.3d 388, 390 (Tex. App.—Amarillo 2010, pet. ref'd); *Pegues v. State*, 518 S.W.3d 529, 535 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

6

Here, even if an exculpatory touch DNA result was produced by testing the golf club, it would not identify the person who committed the assault or demonstrate that Hernandez did not participate in the assault. *See Prible*, 245 S.W.3d at 470. Such an exculpatory result would merely demonstrate that a third party handled the golf club, which was consistent with Moreno's testimony that he kept the golf club in his shop and was able to pull it away from Hernandez. *See Cate*, 326 S.W.3d at 390. Thus, the trial court correctly concluded that Hernandez has not shown identity was and is an issue in this case.

## B. Effect of Exculpatory Results

The record also supports the trial court's finding that Hernandez has not established by a preponderance of the evidence that an exculpatory DNA test result would have changed the outcome of his trial.

DNA testing is permitted only if "the convicted person establishes by a preponderance of the evidence that the person would not have been convicted if exculpatory results had been obtained through DNA testing." TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). A convicted person must show a greater than 50% chance that he would not have been convicted had exculpatory results from the requested DNA testing been available at trial. *Hall*, 569 S.W.3d at 655. "Exculpatory results" means only results excluding the convicted person as the donor of the DNA. *Id.* at 655–56. "A 'favorable' DNA test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters.'" *Ex parte Gutierrez*, 337 S.W.3d 883, 892 (Tex. Crim. App. 2011) (quoting *Rivera*,

7

89 S.W.3d at 59).

Evidence that shows someone other than the convicted person was involved in the crime does not exonerate him. *Hall*, 569 S.W.3d at 657–58. DNA analysis is more probative when the number of potential DNA contributors to an item of evidence is reasonably limited. *Id.* "[T]ouch DNA poses special problems because 'epithelial cells are ubiquitous on handled materials,' because 'there is an uncertain connection between the DNA profile identified from the epithelial cells and the person who deposited them,' and because 'touch DNA analysis cannot determine when an epithelial cell was deposited.'" *Hall*, 569 S.W.3d at 658 (quoting *Reed v. State*, 541 S.W.3d 759, 776–77 (Tex. Crim. App. 2017)). Consequently, the Texas Court of Criminal Appeals has recognized that "the significant possibility of [touch] DNA being deposited by an innocent person reduces the probative value of any [touch] DNA test result." *Id.*

Here, it is very likely that an exculpatory DNA result from the golf club was contributed by an innocent person. As mentioned above, Moreno testified that the golf club was in his store for a long time prior to the assault and that he was able to pull the golf club away from Hernandez during the assault.[2] An exculpatory result may therefore be attributed to Moreno or any number of shop-goers, and thus, the probative value of an exculpatory DNA test result from the golf club is severely reduced. *Hall*, 569 S.W.3d at 658.

Further, "Texas courts have consistently held that a movant does not satisfy his burden under Article 64.03 if the record contains other substantial evidence of guilt

---

[2] The record also indicates the prosecutor, defense counsel, and Moreno handled the golf club without gloves during Hernandez's trial. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A)(ii).

independent of that for which the movant seeks DNA testing." *Swearingen*, 303 S.W.3d at 736. Two of Hernandez's accomplices linked him to the scene of the crime and testified to witnessing Hernandez assault Resendez. Moreno and Resendez both testified that Hernandez swung the golf club at Resendez. An exculpatory touch DNA result would be consistent with the defense's theory that he did not use a golf club during the commission of the assault, but it would also be consistent with the evidence presented by the State that both Moreno and Hernandez handled the golf club.

Given the evidence of Hernandez's guilt that is not dependent on DNA and given the low probative value the Court of Criminal Appeals accords touch DNA, we conclude the trial court did not err in determining Hernandez failed to show by a preponderance of the evidence that, had an exculpatory DNA result been presented at trial, he would have been exonerated. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(2)(A) (requiring that the convicted person establish by a preponderance of the evidence that he "would not have been convicted if exculpatory results had been obtained through DNA testing"); *Hall*, 569 S.W.3d at 658.

We therefore conclude the trial court did not err in finding identity was and is not an issue and that Hernandez has not shown by a preponderance of the evidence that he would not have been convicted had an exculpatory DNA result been recovered from the golf club. Because these elements are dispositive, we do not address the other elements of Article 64.03 discussed by Hernandez. *See* TEX. R. APP. P. 47.1.

### IV. REASONABLE GROUNDS FOR MOTION

In his final issue, Hernandez challenges the trial's court's finding that his motion

for post-conviction DNA testing was frivolous. The trial court, in declining to appoint counsel for Hernandez, found that no reasonable grounds exist for the filing of his motion.

An indigent convicted person has a limited right to appointed counsel if he intends to file a motion for post-conviction DNA testing. *Ex parte Gutierrez*, 337 S.W.3d at 889; TEX. CODE CRIM. PROC. ANN. art. 64.01(c). Counsel may be appointed when the facts stated in the request for counsel or otherwise known to the convicting court reasonably suggest that a valid or viable argument for testing can be made. *Ex parte Gutierrez*, 337 S.W.3d at 891.

We have already concluded, as the trial court did, that Hernandez has not met the statutory requirements prescribed by Article 64.03. Since Hernandez failed to meet two of the statutory preconditions to obtaining DNA testing under Chapter 64, the trial court acted within its discretion by finding there were no reasonable grounds for Hernandez's post-conviction motion for DNA testing. *See Weems v. State*, 550 S.W.3d 776, 781 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

We overrule Hernandez's final issue.

## V. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P 47.2(b).

Delivered and filed on the
3rd day of February, 2022.